IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NIMITZ TECHNOLOGIES LLC,

        Plaintiff,

        v.

CNET MEDIA, INC.,

        Defendant.

C.A. No. 1:21-cv-01247-CFC

**JURY TRIAL DEMANDED**

## CNET'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

FISH & RICHARDSON P.C.

Jeremy D. Anderson (#4515)
222 Delaware Ave., 17th Floor
P.O. Box 1114
Wilmington, DE 19801
(302) 652-5070 Telephone
janderson@fr.com

Neil J. McNabnay
Lance Wyatt
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070 (Telephone)
mcnabnay@fr.com
wyatt@fr.com

ATTORNEYS FOR DEFENDANT
CNET MEDIA, INC.

Dated: September 21, 2021

# **TABLE OF CONTENTS**

I.      STAGE AND NATURE OF PROCEEDINGS.................................... 1

II.     SUMMARY OF THE ARGUMENT .................................................. 1

III.    STATEMENT OF THE ISSUE .......................................................... 3

IV.     STATEMENT OF THE FACTS .......................................................... 3

V.      ARGUMENT..................................................................................... 6

      A.      Legal Standard........................................................................ 6

           1.     This Case Should Be Disposed of at the Pleading
               Stage Through Rule 12(b)(6). ........................................... 6

           2.     The Law of 35 U.S.C. § 101. ........................................... 7

      B.      The Patent-in-Suit is Invalid under 35 U.S.C. § 101. ................ 9

           1.     The independent claims of the '328 Patent are
               patent-ineligible. .......................................................... 10

           2.     The dependent claims of the '328 Patent are not
               patent eligible. ............................................................... 19

           3.     There are no claim construction or factual
               disputes preventing the Court from ruling on this
               issue at the Rule 12 stage. .............................................. 20

VI.     CONCLUSION................................................................................. 22

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
  134 S. Ct. 2347 (2014)..................................................................*passim*

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC,*
  966 F.3d 1347 (Fed. Cir. 2020) (Chen, J., concurring) ......................................13

*Ancora Techs. v. HTC Am., Inc.,*
  908 F.3d 1343 (Fed. Cir. 2018) ..................................................................15, 16

*Appistry, Inc. v. Amazon.com, Inc.,*
  195 F. Supp. 3d 1176 (W.D. Wash., 2016) *aff'd sub nom. Appistry,*
  *LLC v. Amazon.com, Inc.*, 676 F. App'x 1008 (Fed. Cir. 2017) ......................21

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)..................................................................................6

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.,*
  687 F.3d 1266 (Fed. Cir. 2012) ...................................................................7

*Berkheimer v. HP Inc.,*
  881 F.3d 1360 (Fed. Cir. 2018) .................................................................20

*Bilski v. Kappos,*
  561 U.S. 593 (2010)..........................................................................7, 8, 10

*BSG Tech LLC v. Buyseasons, Inc.,*
  899 F.3d 1281 (Fed. Cir. 2018) .................................................................12

*buySAFE, Inc. v. Google, Inc.,*
  *765 F.3d at 1355*...................................................................................18

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l*
  *Ass'n,*
  776 F.3d 1343 (Fed. Cir. 2014) ............................................................10, 18

*Core Wireless Licensing S.A.R.L. v. LG Elec., Inc.,*
  880 F.3d 1356 (Fed. Cir. 2018) .................................................................14

*Cuvillier v. Taylor*,
  503 F.3d 397 (5th Cir. 2007) ................................................................7

*CyberSource Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed. Cir. 2011) ...........................................................8

*Data Engine Techs. LLC v. Google LLC*,
  906 F.3d 999 (Fed. Cir. 2018) ............................................................14

*Diamond v. Chakrabarty*,
  447 U.S. 303 (1980)..............................................................................7

*Diamond v. Diehr*,
  450 U.S. 175 (1981)..............................................................................9

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016) .............................................15, 16, 19

*Epic IP LLC v. Backblaze, Inc.*,
  351 F. Supp. 3d 733 (D. Del. 2018)................................................2, 13

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
  955 F.3d 1317 (Fed. Cir. 2020) ..........................................................16

*Finjan, Inc. v. Blue Coat System, Inc.*,
  879 F.3d 1299 (Fed. Cir. 2018) ..........................................................12

*Fort Props., Inc. v. Am. Master Lease LLC*,
  671 F.3d 1317 (Fed. Cir. 2012) ............................................................9

*Gibbs v. Coupe*,
  No. CV 14-790-SLR, 2015 WL 6870033 (D. Del. Nov. 6, 2015) ......6

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
  132 S. Ct. 1289 (2012)......................................................................8, 9

*Morales v. Square, Inc.*,
  75 F. Supp. 3d. 716 (W.D. Tex. 2014), *aff'd*, 621 F. App'x 660
  (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 1461 (2016).....................10

*Parker v. Flook*,
  437 U.S. 584 (1978)........................................................................9, 16

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*,
2:16-cv-152-JRG-RSP, 2017 WL 1065938 (E.D. Tex. Mar. 8,
2017) ................................................................................................... 10

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
855 F.3d 1322 (Fed. Cir. 2017) ......................................................... 14

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018) .................................................... 12, 14

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
873 F.3d 905 (Fed. Cir. 2017) ........................................................... 17

*Simio, LLC v. FlexSim Software Products, Inc.*,
983 F.3d 1353 (Fed. Cir. 2020) ......................................................... 21

*In re TLI Commc'ns LLC Patent Litigation*,
823 F.3d 607 (Fed. Cir. 2016) ........................................................... 17

*Intellectual Ventures I LLC v. Symantec Corp.*
*838 F.3d 1307, 1316 (Fed. Cir. 2016)* ............................................. 18

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017) ......................................................... 14

*Ultramercial, Inc. v. Hulu*, *LLC*,
772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring) ....................... 7

*Victaulic Co. v. Tieman*,
499 F.3d 227 (3rd Cir. 2007) ............................................................... 6

**Statutes**

35 U.S.C. § 101 ............................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12 ............................................................................ *passim*

## I.     STAGE AND NATURE OF PROCEEDINGS

On August 30, 2021, Plaintiff Nimitz Technologies, Inc. filed this lawsuit accusing CNET Media, Inc. of infringing U.S. Patent No. 7,848,328. Nimitz accuses CNET of infringing at least Claim 1 of the '328 Patent via its website, www.gamespot.com. Compl. ¶ 16, Ex. 2.

## II.    SUMMARY OF THE ARGUMENT

The idea of assigning values to identify data streams corresponding to different versions of content is an abstract concept ineligible for patent protection. The '328 Patent's claims are directed to this abstract concept and do not claim any inventive concept sufficient to confer patent eligibility on the claimed abstract idea.

Broadcasting content has been achieved using the User Datagram Protocol (UDP) and Internet Protocol (IP) for years. The '328 Patent itself explains that "[t]he user datagram protocol is known in the art" and that Internet Protocol version 4 (IPv4) and Internet Protocol version 6 (IPv6) "are also well known in the art." '328 Patent at 4:66, 9:7–10. According to the '328 Patent, when broadcasting specific content, it may be useful to broadcast multiple versions of that content. *See id.* at 1:5–8. And if different versions of content are broadcasted, it is desirable to transmit them in a manner that separates the different versions available. *See id.* at 1:12–16. Thus, the purported solution introduced by the '328 Patent was to identify data streams corresponding to the different versions of the same content—that is,

to assign some value to components of the different versions so they can be distinguished from one another. But the claims do not provide any specific way of accomplishing this idea. In essence, the applicant thought, "Wouldn't it be nice to have a method to identify different versions of the same content?" Indeed, the '328 Patent states that "it would be useful to have some mechanism for identifying data streams corresponding to the different versions of . . . content." *Id.* at 1:16–19. The applicant then claimed precisely that concept.

Thus, the '328 Patent's applicant did not claim an unconventional system to solve the problem he identified. Nor did he claim a particular mechanism for improving computing systems. As Judge Bryson, sitting by designation in the District of Delaware, noted, claims that "recite the concept, but not the way to implement it," are ineligible for patenting. *Epic IP LLC v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 740 (D. Del. 2018). The '328 Patent simply claims an abstract concept, not a specific implementation of that concept. Its claims are therefore invalid for failure to claim patent-eligible subject matter.

Resolving this issue does not require discovery or formal claim construction. To avoid waste of judicial and party resources unnecessarily litigating an invalid patent, CNET thus requests that the Court dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

## III.   STATEMENT OF THE ISSUE

Abstract ideas are ineligible for patentability under 35 U.S.C. § 101, absent an inventive concept that amounts to significantly more than the abstract idea. The claims of the '328 Patent are directed to the abstract idea of assigning values to identify data streams corresponding to different versions of content. The '328 Patent does not include an inventive concept beyond that idea. Should the Court therefore dismiss Nimitz's claims pursuant to Rule 12(b)(6)?

## IV.   STATEMENT OF THE FACTS

The '328 Patent is entitled "Broadcast content encapsulation." It relates to "data streams [that] are encapsulated into User Datagram Protocol (UDP) packets [that] are given component-identifying values." '328 Patent at Abstract. A "user equipment (UE) receiving the transmitted service identifies desired components based on the . . . values," and "[t]he UE further encapsulates desired component UDP packets into Internet Protocol (IP) packets, and may assign component-identifying values to fields of the IP packets." *Id.* The UDP and IP encapsulation described in the '328 Patent were used for broadcasting long before the alleged invention claimed in the patent. *See id.* at 4:66, 9:7–10. Specifically, the '328 Patent explains that "user datagram protocol is known in the art and is described by the Internet Engineering Task Force Request for Comment number 768 (IETF RFC

768).”[1] *Id.* at 4:66–5:1. The '328 Patent also explains that Internet Protocol version 4 (IPv4) and Internet Protocol version 6 (IPv6) “are also well known in the art, are described by IETF RFC 791 and IETC RFC 2460, respectively.”[2] *Id.* at 9:7–12.

The applicant of the '328 Patent had one goal in mind: “If multiple versions of the same content are to be broadcast, multicast and/or unicast, it would be useful to have some mechanism for ***identifying data streams*** corresponding to the different versions of that content.” *Id.* at 1:16–19 (emphasis added).

To accomplish this goal, the alleged invention identifies data streams by assigning values to the UDP and IP packets. *Id.* at Abstract. This purported solution is depicted in Figure 4 (with the assigned values highlighted):



**FIG. 4**

---

[1] The '328 Patent lists RFC 768 as published on August 28, 1980. *See* '328 Patent, OTHER PUBLICATIONS.

[2] The '328 Patent also lists RFC 791 as published in September 1981, and RFC 2460 as published in December 1998.

*Id.* at Fig. 4 (annotated). The '328 Patent explains the assignment of values to the

UDP packets depicted in Figure 4:

> The destination port field of each UDP packet for component A will have the value "X," which value is used by ESG 305 to identify component A. The destination port field in each UDP packet for component B will have the value "Y" and the destination port field in each UDP packet for component C will have the value "Z," which values are used by ESG 305 to identify components B and C. If UDP packets 311, 312 and 313 were further encapsulated within IP packets (as discussed below in connection with FIGS. 10-12), the IP source and destination addresses for the encapsulating IP packets could also be used by ESG 305 to identify components A, B and C.

*Id.* at 6:37–48.

In addition to the well-known UDP and IP encapsulation methods described

in the '328 Patent, the patent also explains the use of off-the-shelf components that

existed in prior art to implement this idea: "Service provider 101 includes one or

more computers 102 having processors, memory elements and interface elements,

***as is known in the art***." *Id.* at 4:14–16 (emphasis added). The '328 Patent also

explains that the purported invention "may use various communication protocols

for communication through network(s) 700, such as Internet Protocol (IP),

Transmission Control Protocol (TCP), Simple Mail Transfer Protocol (SMTP)

among others ***known in the art***." *Id.* at 13:16–21 (emphasis added).

Consequently, the alleged invention claimed in the '328 Patent amounts to nothing more than using off-the-shelf components to assign values for identifying data streams corresponding to different versions of content.

## V.   ARGUMENT

### A.        Legal Standard

#### 1.        This Case Should Be Disposed of at the Pleading Stage Through Rule 12(b)(6).

Under Rule 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint "must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3rd Cir. 2007) (citation omitted). In deciding a Rule 12(b)(6) motion, courts consider documents attached to or incorporated into the complaint as well as facts alleged in the complaint. *Gibbs v. Coupe*, No. CV 14-790-SLR, 2015 WL 6870033, at *1 (D. Del. Nov. 6, 2015) (citation omitted). Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions"). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency

should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (internal citations and quotations omitted).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu*, *LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring). In those situations, claim construction is not required to conduct a § 101 analysis. *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

### 2.       The Law of 35 U.S.C. § 101.

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. Also, the law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and ***abstract ideas***." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980) (emphasis added). Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611–12. In other words,

"abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted).

Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id*. at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). Indeed, if a claim could be performed in the human mind, or by a human using pen and paper, it is not patent-eligible. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). Also, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity—such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297–98, 1300-01; *Bilski*, 561 U.S.

at 610; *Diamond v. Diehr*, 450 U.S. 175, 191–92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978). Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300; *see also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not impose meaningful limits on the claim's scope.").

### B.   The Patent-in-Suit is Invalid under 35 U.S.C. § 101.

Nimitz's claims regarding the '328 Patent should be dismissed. The claims of the '328 Patent are invalid under 35 U.S.C. § 101 because they fail both steps of the *Alice* test. Each of the claims is directed to the abstract idea of assigning values to identify data streams corresponding to different versions of content. Abstract ideas are not eligible for patenting. None of the claims contains an "'inventive concept' . . . sufficient to ensure that the patent in practice amounts to **significantly more** than a patent upon the ineligible concept itself." *See Alice*, 134 S. Ct. at 2355 (emphasis added). Because Nimitz has failed to state a claim upon which relief may be granted, CNET respectfully requests that the Court grant its motion and dismiss this case with prejudice. Fed. R. Civ. P. 12(b)(6).

1.      **The independent claims of the '328 Patent are patent-ineligible.**

In determining patent eligibility under § 101, the Court must first determine whether the claims are directed to an abstract idea. *Alice*, 134 S. Ct. at 2355. Under any plausible reading, the claims of the '328 Patent are directed to an unpatentable, abstract idea because they claim nothing more than the "longstanding," "routine," and "conventional" concept of assigning values to identify data streams corresponding to different versions of content. *See Alice*, 134 S. Ct. at 2356–59; *Bilski*, 561 U.S. at 611.

(a)      ***Alice Step 1: The independent claims are directed to the abstract idea of assigning values to identify data streams corresponding to different versions of content.***

Claim 1 of the '328 Patent is representative of the claims.[3] *See, e.g.*, *Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*, 2:16-cv-152-JRG-RSP, 2017 WL 1065938, at \*8–9 (E.D. Tex. Mar. 8, 2017) (invalidating 974 claims after analyzing only a few "representative claims" where the other claims were "substantially similar" and "linked to the same abstract idea."). In assessing whether this claim is directed to an abstract idea, the Court must look past the claim language for the purpose of the claim to determine what the invention is trying to achieve. *Morales*

---

[3] Where claims are "substantially similar and linked to the same abstract idea," courts may look to representative claims in a § 101 analysis. *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

*v. Square, Inc.*, 75 F. Supp. 3d. 716, 725 (W.D. Tex. 2014), *aff'd*, 621 F. App'x

660 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 1461 (2016). All Claim 1 of the '328

Patent explains is assigning values to identify data streams corresponding to

different versions of content:

| Claim Language | Claimed Idea |
|---|---|
| 1. A method comprising:<br>mapping, with at least one processor, each of a plurality of data streams related to a specific content to a different component of a service delivering multiple versions of the specific content | mapping data streams to components |
| encapsulating each data stream of the plurality into a stream of packets according to a first communication protocol, | encapsulating data streams into packets |
| as to each of the packet streams, the packets have a value in a common field identifying the component mapped to the data stream encapsulated by the packet stream; and | values in the packets identify the mapped component |
| forwarding the packet streams for transmission in a transmission channel | forwarding packets for transmission |
| the mapping further comprises assigning a specific value to each component for a predefined field of a packet according to a second communication protocol, the specific value distinguishing the component from other components, and | assigning a value to distinguish components |
| the encapsulating comprises encapsulating the packet streams according to one or more lower layer protocols without encapsulating the packet streams according to the second communication protocol. | encapsulating data streams into packets |

As seen above, the claim quickly reduces down to the bare idea of assigning values to identify data streams corresponding to different versions of content. Much like the long-standing practice of using name tags to identify different people, this is an abstract idea ineligible for patenting.

The abstract idea inquiry begins by analyzing the "focus" of the claim, i.e., its "character as a whole," in order to determine whether the claim is directed to an abstract idea. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). For example, the Federal Circuit has explained that this Court should examine the patent's "'claimed advance' to determine whether the claims are directed to an abstract idea." *Finjan, Inc. v. Blue Coat System, Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018). "In cases involving software innovations, this inquiry often turns on whether the claims focus on 'the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool.'" *Id.* (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016)); *see BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1285-86 (Fed. Cir. 2018).

Here, Claim 1 is not directed to any specific means or method for improving technology—it is directed to the abstract idea of assigning values to identify data streams corresponding to different versions of content. The applicant noticed that "it would be useful to have some mechanism for identifying data streams

corresponding to the different versions of . . . content." '328 Patent at 1:16–19.

Indeed, Nimitz alleges in its Complaint that the '328 Patent was allowed based on

the method claims' inclusion of "assigning a specific value to each component for

a predefined field of a packet according to a second communication protocol, the

specific value distinguishing the component from other components." Compl. ¶ 9

(purportedly quoting the '328 Patent's Notice of Allowability). But assigning

values to identify data streams corresponding to different versions of content is a

concept, not an invention, and thus ineligible for patenting. *See, e.g.*, *Epic IP*, 351

F. Supp. 3d at 740 ("The problem, however, is that the idea of a chat session

separate from the original website is not an invention; it is a concept. The asserted

claims of the '599 patent recite the concept, but not the way to implement it.").

The functional nature of Claim 1's limitations further supports its

abstractness. In determining whether a particular claim is directed to an abstract

idea, courts have focused on whether the claim is purely functional in nature rather

than containing the specificity necessary to recite how the claimed function is

achieved. As Federal Circuit Judge Chen recently commented, "while not all

functional claiming is the same, simply reciting a functional result at the point of

novelty poses serious risks under section 101." *Am. Axle & Mfg., Inc. v. Neapco*

*Holdings LLC*, 966 F.3d 1347, 1356 (Fed. Cir. 2020) (Chen, J., concurring)

(citations omitted). For example, in *SAP America*, the court asked whether the

claim had "the specificity required to transform [it] from one claiming only a result to one claiming a way of achieving it." 898 F.3d at 1167. To answer that question, the Federal Circuit has directed courts to "look to whether the claims focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017). Therefore, the question in such cases is "whether the claims are directed to 'a specific means or method' for improving technology or whether they are simply directed to an abstract end-result." *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017).

Claim 1 is directed to an abstract end-result. It lacks any of the specificity that the Federal Circuit has held is sufficient to confer patent eligibility. *Cf. Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018) (holding eligible claims with the required specificity, but ineligible those without it); *Core Wireless Licensing S.A.R.L. v. LG Elec., Inc.,* 880 F.3d 1356, 1361–63 (Fed. Cir. 2018) (holding claims eligible where they were "directed to a **specific** improvement in the capabilities of computing devices") (emphasis added); *see also RecogniCorp*, 855 F.3d at 1326 (claims were ineligible because they were not directed to "a **specific** means or method for improving technology") (emphasis added). Claim 1 does not require a new or unconventional machine or process for assigning values

14

to identify data streams corresponding to different versions of content, let alone a new or unconventional machine or process for encapsulating data streams or broadcasting content; it requires only assigning values to data streams encapsulated in packets. "Inquiry therefore must turn to any requirements for *how* the desired result is achieved." *Elec. Power Grp., LLC v. Alstom S.A.,* 830 F.3d 1350, 1355 (Fed. Cir. 2016). But Claim 1 does not describe how the desired result—assigning values to identify data streams corresponding to different versions of content—is achieved. The mechanism to implement the idea is impermissibly unbounded in scope.

Claim 1 thus differs from the claims that the Federal Circuit has held to be eligible because they claimed specific means for improving specific computer technology or solving specific computer problems. For example, the Federal Circuit addressed the eligibility of claims directed to improving computer security in *Ancora Techs. v. HTC Am., Inc.*, 908 F.3d 1343 (Fed. Cir. 2018). In that case, the Federal Circuit held the claims eligible and stated, "Improving security—here, against a computer's unauthorized use of a program—can be a ***non-abstract*** computer-functionality improvement . . . done by a ***specific technique*** that departs from earlier approaches to solve a ***specific computer problem***." *Id.* at 1348 (emphasis added). The court was persuaded because "[t]he claimed method here specifically identifies how that functionality improvement is effectuated in an

assertedly unexpected way." *Id.* The same is not true of Claim 1 of the '328 Patent. It does not require a specific and unconventional technique, and it does not identify any specific improvement to computer functionality, much less an unexpected way of effectuating such an improvement.

That Claim 1 is limited to a particular technological environment, such as encapsulated data streams, does not alter this analysis. "Most obviously, limiting the claims to [a] particular technological environment . . . is, without more, insufficient to transform them into patent-eligible applications of the abstract idea at their core." *Elec. Power Grp.*, 830 F.3d at 1354. As the Supreme Court explained in *Alice, Parker v. Flook,* 437 U.S. 584 (1978) stands for the proposition that the prohibition on patenting abstract ideas cannot be circumvented by attempting to limit the use of the idea to a particular technological environment. *Alice,* 134 S. Ct. at 2358. Claim 1 is directed to an abstract idea even if its limitations require practicing that idea in a data stream environment.

Further, while Claim 1 may use technical jargon, that does not mean it teaches a technical solution. *See Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1326 (Fed. Cir. 2020) ("Although written in technical jargon, a close analysis of the claims reveals that they require nothing more than this abstract idea."). And even if the '328 Patent were directed to a useful idea, a patent is still invalid for lack of subject-matter eligibility when it teaches a useful abstract

idea. *See Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 910 (Fed. Cir. 2017) ("The fact that an [idea] can be used to make a process more efficient, however, does not necessarily render an abstract idea less abstract.").

The other independent claims of the '328 Patent, Claims 5, 9, 14, 17, 19, 22, 24, and 27, fare no better under this analysis: they are directed to the same abstract idea. At bottom, the claimed advance of the independent claims is the abstract concept of assigning values to identify data streams corresponding to different versions of content. This concept is an abstract idea, not an invention, and the desire for the concept to be accomplished efficiently, without more, does not confer eligibility. Accordingly, the independent claims fail the first step of the *Alice* analysis.

> **(b)** ***Alice Step 2: The independent claims do not contain an inventive concept sufficient to confer patent eligibility.***

The independent claims of the '328 Patent are implemented on generic computer technology and therefore do not contain an inventive concept sufficient to confer eligibility. There is simply nothing "inventive" about using existing off-the-shelf components and well-known protocols to assign values for identifying data streams corresponding to different versions of content. As explained above, the abstract functional descriptions in the independent claims of the '328 Patent are devoid of any technical explanation as to how to implement the purported invention in an inventive way. *See In re TLI Commc'ns LLC Patent Litigation*, 823

17

F.3d 607, 615 (Fed. Cir. 2016) (claims failed *Alice*'s step 2 where specification limited its discussion of "additional functionality" of conventional components "to abstract functional descriptions devoid of technical explanation as to how to implement the invention"). Similar to the invalidated claims in *Intellectual Ventures I LLC v. Symantec Corp.*, nothing in Claim 1 "contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." 838 F.3d 1307, 1316 (Fed. Cir. 2016) (citing omitted).

Courts have repeatedly held that the presence of generic hardware and software like the kind recited in the independent claims of the '328 Patent does not make an otherwise abstract idea patent-eligible. *See, e.g.*, *buySAFE, Inc. v. Google, Inc.,* 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *Content Extraction*, 776 F.3d at 1348 ("At most, [the] claims attempt to limit the abstract idea of recognizing and storing information from hard copy documents using a scanner and a computer to a particular technological environment. Such a limitation has been held insufficient to save a claim in this context."). Claim 1 only requires using a processor to assign values for identifying data streams corresponding to different versions of content. The '328 Patent explains that "[s]ervice provider 101 includes one or more computers 102 having processors, memory elements and interface elements, as is known in the art." '328

Patent at 4:14–16. "Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer . . . technology." *Elec. Power Grp.*, 830 F.3d at 1355. There is thus no limitation in the independent claims that could be considered an inventive concept under step two of the *Alice* test.

## 2. The dependent claims of the '328 Patent are not patent eligible.

The dependent claims of the '328 Patent add additional limitations regarding the abstract idea, but they do not include the specificity necessary to claim patent-eligible subject matter. Claim 2 includes additional limitations regarding "a user datagram protocol," Claim 3 includes an additional limitation that "the user datagram protocol source port field of the packets in each of the packet streams has a value identifying a provider of the service," and Claim 4 includes additional limitations regarding "a user datagram protocol" and "an internet protocol." Similar to the independent Claim 1, its dependent claims do not include anything other than well-known protocols such that they fail to contain an inventive concept. Accordingly, the dependent claims suffer from the same flaws as the independent claims, despite their additional limitations, and should therefore be treated the same as the independent claims. The dependent claims also do not contain any inventive concept amounting to "significantly more" than the abstract idea. They do not inject any unconventional computer components or techniques.

Accordingly, the dependent claims, like the independent claims, fail both steps of the *Alice* test and should be found ineligible.

### 3.   There are no claim construction or factual disputes preventing the Court from ruling on this issue at the Rule 12 stage.

The issue of the patent eligibility of the '328 Patent is ripe for the Court's consideration. There are no claim construction issues affecting the *Alice* analysis, as CNET has not proposed any constructions of the patent terms that would alter the ineligibility of the claims. Additionally, there are no factual disputes on this record. The '328 Patent does not assert any unconventional mechanism of implementing the claimed idea of assigning values to identify data streams corresponding to different versions of content.

This case is thus unlike *Berkheimer*, where the Federal Circuit noted that the specification explicitly "describe[d] an inventive feature that store[d] parsed data in a purportedly unconventional manner." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018). The Federal Circuit then examined whether the improvements described in the specification were included in the claims. For those claims where the inventive feature in the specification was "captured in the claims," the Federal Circuit found a "factual dispute regarding whether the invention describe[d] well-understood, routine, and conventional activities." *Id*. But where the claims did not recite the purportedly inventive features described in

the specification, the Federal Circuit concluded that they were directed to patent ineligible subject matter under § 101. *Id.* Here, in contrast, neither the claims nor the specification describes any unconventional components or the use of generic components in some unconventional manner.

Here, Nimitz's bare and implausible allegations in the complaint cannot defeat this motion; otherwise, Rule 12(b)(6) would be rendered toothless against plaintiffs who plead "magic words." Compl. ¶¶ 11–13. Patentee plaintiffs should not have the power to unilaterally declare that their claims are inventive. *See Appistry, Inc. v. Amazon.com, Inc.*, 195 F. Supp. 3d 1176, 1183, n.6 (W.D. Wash., 2016) *aff'd sub nom. Appistry, LLC v. Amazon.com, Inc.*, 676 F. App'x 1008 (Fed. Cir. 2017) ("Plaintiff's position is absurd. Requiring the Court to accept such facts or legal conclusions (even in the form of an early expert declaration) would permit any plaintiff to circumvent the § 101 inquiry on an early motion to dismiss or motion for judgment on the pleadings simply by including a few lines attesting to the novelty of the invention."). Nimitz's "inventiveness" allegations betray that it is keenly aware of the claims' vulnerability. The Court's ineligibility analysis should disregard Nimitz's boilerplate legal conclusions about the inventive aspects of the '328 Patent. *See Simio, LLC v. FlexSim Software Products, Inc.*, 983 F.3d 1353, 1366 (Fed. Cir. 2020) ("We disregard conclusory statements when evaluating a complaint under Rule 12(b)(6).").

21

Accordingly, this issue is ripe for the Court's consideration, and the '328 Patent should be found invalid for failing to claim patent-eligible subject matter.

## VI.    CONCLUSION

For the foregoing reasons, CNET respectfully requests that the Court dismiss Nimitz's claims based on the '328 Patent for failure to state a claim upon which relief can be granted. Because leave to amend would be futile, CNET requests dismissal with prejudice.

Dated: September 21, 2021                              FISH & RICHARDSON P.C.

By: */s/ Jeremy D. Anderson*
Jeremy D. Anderson (#4515)
222 Delaware Avenue, 17th Floor
Wilmington, Delaware 19801
(302) 652-5070 (Telephone)
janderson@fr.com

Neil J. McNabnay
Lance Wyatt
1717 Main Street, Suite 5000
Dallas, Texas 19001
(214) 747-5070 (Telephone)
mcnabnay@fr.com;
wyatt@fr.com


ATTORNEYS FOR DEFENDANT
CNET MEDIA, INC.

## **Certificate of Compliance**

This brief complies with the Standing Order and was prepared in a

proportionally spaced, 14-point font and contains 4,992 words.


September 21, 2021                              */s/ Jeremy D. Anderson*
                                               Jeremy D. Anderson