2022-

# United States Court of Appeals
# for the Federal Circuit

In Re

NIMITZ TECHNOLOGIES LLC,

*Petitioner.*

*On Petition for a Writ of Mandamus to the United States District Court
for the District of Delaware in Case Nos. 1:21-cv-01247-CFC,
1:21-cv-01362-CFC, 1:21-cv-01855-CFC and 1:22-cv-00413-CFC
Honorable Colm F. Connolly, Judge*

## PETITION FOR A WRIT OF MANDAMUS

GEORGE PAZUNIAK
O'KELLY & O'ROURKE, LLC
*Counsel for Petitioner*
824 North Market Street, Suite 1001A
Wilmington, Delaware 19801
(302) 776-4000
gp@del-iplaw.com

NOVEMBER 15, 2022

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, Counsel for the Petitioner Nimitz Technologies LLC ("Nimitz") certifies the following:

1.      The full name of every party or *amicus* represented by me is:

Petitioner Nimitz Technologies LLC

2.      The name of the real party in interest represented by me is:

Not applicable.

3.      All parent corporations and any publicly held companies that own 10% or more of the stock of the party or *amicus* represented by me are:

None

4.      The names of all law firms and the partners or associates that appeared for the party or *amicus* now represented by me in the trial court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

Raymond W. Mort, III, The Mort Law Firm, Pllc, 501 Congress Ave. Suite 150, Austin, Texas · 78701

5.      The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:

(all cases pending in the District of Delaware)

| Backertop Licensing LLC v. August Home, Inc. | 1:22-cv-00573-CFC |
|---|---|
| Backertop Licensing LLC v. Canary Connect, Inc | 1:22-cv-0572-CFC |
| Lamplight Licensing LLC v ABB, Inc., | 1:22-cv-0418-CFC |
| Lamplight Licensing LLC v Ingam Micro, Inc., | 1:22-cv-1017-CFC |
| Mellaconic IP, LLC v. Timeclock Plus, LLC | 1:22-cv-0244-CFC |
| Mellaconic IP, LLC v. Deputy, Inc. | 1:22-cv-0541-CFC |
| Creekview IP LLC v. Skullcandy Inc. | 1:22-cv-00427-CFC |
| Creekview IP LLC v. Jabra Corp. | 1:22-cv-00426-CFC |

| Swirlate IP LLC v. Quantela, Inc. | 1:22-cv-00235-CFC |
|---|---|
| Swirlate IP LLC v. Lantronix, Inc. | 1:22-cv-00249-CFC |
| Waverly Licensing LLC v. AT&T Mobility LLC | 1:22-cv-00420-CFC |
| Waverly Licensing LLC v. Granite River Labs Inc. | 1:22-cv-00422-CFC |

6.    Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

None.

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ....................................................................i

TABLE OF AUTHORITIES .........................................................................v

INTRODUCTION .........................................................................................1

RELIEF SOUGHT ........................................................................................3

ISSUE PRESENTED .....................................................................................4

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ............................4

    A.    Nimitz Was Owner of a Patent and Sued Defendants ..........................4

    B.    The District Court's Standing Order and Nimitz' Responses...............5

    C.    The District Court *Sua Sponte* Begins Judicial Inquisition of Nimitz .........................................................................................6

    D.    In Continuing Pursuit of its Unwarranted and Improper Judicial Inquisition, the District Court *Sua Sponte* Orders Nimitz to Provide Documents, Including Privileged and Work-Product Documents ...............................................................10

    E.    The District Court's Inquisition and Order Are Unprecedented ..............................................................................12

    F.    Essentially Same Memorandum Order Issued in Other Cases ...........12

REASONS FOR ISSUING THE WRIT........................................................13

    I.    Nimitz Has A Clear And Indisputable Right To The Writ .................14

        A.    The District Court Seeks Information That is Barred From Consideration By Statute and This Court's Precedent..........................................................................14

        B.    The Memorandum Order Does Not Allow Nimitz to Assert Attorney-Client Privilege or Work Product Immunity..........................................................................19

        C.    The Interests of Judicial and Patent Policy Support Issuing the Writ........................................................................21

II.     Nimitz Has No Other Adequate Means To Obtain Relief ..................23

III.    Mandamus Is Appropriate Here Because the District Court
        Has Undertaken an Illegal and Unprecedented Crusade
        Trying to Enforce its Own Patent Policy In Derogation of
        Congress' Prerogative and This Court's Precedent ...........................24

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ..............................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Arachnid, Inc. v. Merit Indus., Inc.*,
  939 F.2d 1574 (Fed. Cir. 1991) ....................................................................17

*Bennett v. Donovan*,
  703 F.3d 582 (D.C. Cir. 2013)........................................................................5

*Biotechnology Indus. Org. v. District of Columbia*,
  496 F.3d 1362 (Fed. Cir. 2007) ....................................................................22

*Bogosian v. Gulf Oil Corp.*,
  738 F.2d 587 (3d Cir. 1984) ..........................................................................21

*Cheney v. United States Dist. Court*,
  542 U.S. 367 (2004)........................................................................................14

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990)........................................................................................13

*Crown Die & Tool Co. v. Nye Tool & Mach. Works*,
  261 U.S. 24 (1923)..........................................................................................17

*First Indep. Bank of Nev. v. Mohave State Bank*,
  2010 U.S. Dist. LEXIS 34517 (D. Ariz. 2010) .............................................5

*In re BigCommerce, Inc.*,
  890 F.3d 978 (Fed. Cir. 2018) ............................................................... 14, 26

*In re Google LLC*,
  949 F.3d 1338 (Fed. Cir. 2020) ....................................................................26

*In re Grand Jury*,
  705 F.3d 133 (3d Cir. 2012) ..........................................................................20

*In re Kellogg Brown & Root, Inc.*,
  756 F.3d 754 (D.C. Cir. 2014)........................................................................24

*In re MSTG, Inc.*,
  675 F.3d 1337 (Fed. Cir. 2012) ....................................................................21

*In re Queen's Univ. at Kingston*,
  820 F.3d 1287 (Fed. Cir. 2016) ....................................................................26

v

*In re Teleglobe Commc'ns Corp.*,
    493 F.3d 345 (3d Cir. 2007) ..........................................................20

*In re Volkswagen Grp. of Am.*,
    28 F.4th 1203 (Fed. Cir. 2022) ........................................ 14, 18, 26

*Kimble v. Marvel Entm't, LLC*,
    576 U.S. 446 (2015).................................................................. 21-22

*Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*,
    507 U.S. 163 (1993)......................................................................16

*Mote v. Wilkie*,
    976 F.3d 1337 (Fed. Cir. 2020) ....................................................24

*Pandrol USA, LP v. Airboss Ry. Prods.*,
    320 F.3d 1354 (Fed. Cir. 2003) ....................................................19

*Paradise Creations, Inc. v. U V Sales, Inc.*,
    315 F.3d 1304 (Fed. Cir. 2003) ....................................................16

*Prima Tek II, L.L.C. v. A-Roo Co.*,
    222 F.3d 1372 (Fed. Cir. 2000) ....................................................17

*Schlagenhauf v. Holder*,
    379 U.S. 104 (1964)........................................................... 3, 14, 26

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984)......................................................................22

*Taylor v. Taylor Made Plastics*, Inc.,
    565 F. App'x 888 (Fed. Cir. 2014) ...............................................17

*Uniloc USA, Inc. v. Apple Inc.*,
    784 F. App'x 763 (Fed. Cir. 2019) ...............................................16

*Univ. of S. Fla. Rsch. Found., Inc. v. Fujifilm Med. Sys. U.S.A.*,
    19 F.4th 1315 (Fed. Cir. 2021) .....................................................17


**Statutes & Other Authorities:**

28 U.S.C. § 1651(a) .............................................................................13

35 U.S.C. § 100 ................................................................... 15, 16, 18

35 U.S.C. § 281 ......................................................................... 15, 16

*Black's Law Dictionary* 1020-21 (9th ed. 2009).........................................................6

Fed. R. Civ. P. 17(a)(1)..................................................................... 15, 16

Fed. R. Civ. P. 17(a)(1)(G) ...............................................................18

Fed. R. Civ. P. 26(b)(3)(A) ...............................................................21

Fed. R. Civ. P. 35 ......................................................................... 3, 14

Fed. R. Civ. P. 41(a).......................................................................13

Restatement (Third) of the Law Governing Lawyers § 68 (2000).........................20

Restatement (Third) of the Law Governing Lawyers § 70 (2000).........................20

The Delaware Lawyers' Rules Of Professional Conduct Rule 1.8(e)(1) .................8

## INTRODUCTION

Petitioner asks the Court to review and reverse the attached Memorandum Order. (Appx1-5). The *sua sponte* Order is an unprecedented abuse of discretion by which the district court demands disclosure by one party of its highly confidential litigation-related information, including materials protected by the attorney client privilege and work-product immunity. The information that the district court demands to be produced is not only confidential and irrelevant to any issue before the Court, but the Patent Act and the Federal Rules of Civil Procedure implicitly prohibit any consideration of the facts that the district court demands.

The road to the Memorandum Order began with the district court implementing a Standing Order that required parties to disclose details about any third-party non-recourse funding that applied to their cases. The Standing Order in and of itself constituted an abuse of discretion as it has no basis in the Patent Act or the Federal Rules of Civil Procedure. But Petitioner had no details to disclose because Petitioner had not utilized any such non-recourse funding and so advised the district court.

In response, on the pretense of ensuring that Petitioner had complied with the statement about non-recourse funding, the district court *sua sponte* ordered Petitioner to appear at a hearing to be interrogated by the district court about its statement. The district court also required that two other sets of plaintiff patent

1

owners appear at the same hearing.  The district court never explained why it ordered Petitioner and other patent owner plaintiffs to appear for hearings to testify as to the accuracy of their statements about non-recourse funding, but did not call any of the Defendants even though Defendants also implicitly denied any such non-recourse funding.

At the hearing, the district court's questions extended far beyond anything relevant to third-party non-recourse funding, which was the ostensible purpose of the hearing.

After the hearing, the district court issued the attached Memorandum Order to Petitioner and essentially the same Order to the other plaintiff patent owners who appeared at the hearing.  It demands Petitioner and its counsel disclose, and potentially place on the public record, a wide range of normally protected confidential documents such as the Petitioner's bank statements, and, most dramatically, Petitioner's internal discussions relating to the present ongoing litigations which are protected by the attorney-client privilege and work-product immunity.

The district court now justifies its broad inquisition of the Petitioner and the other plaintiff patent owners as necessary to disclose facts about "the real parties in interest" in the litigations.  But both the Patent Act and the Rules of Civil Procedure prohibit the court's consideration of such facts.  The district court, however, is

2

ignoring the law in pursuit of its own crusade to enforce its own version of patent policy without regard that its policy defies governing law.

In *Schlagenhauf v. Holder*, 379 U.S. 104 (1964), the Supreme Court held that mandamus was appropriate to review a district court's order for the mental and physical examination of a party. The Court held that "the petition was properly before the court on a substantial allegation of usurpation of power in ordering any examination of a defendant, an issue of first impression that called for the construction and application of Rule 35 in a new context" and further the "meaning of Rule 35's requirements of 'in controversy' and 'good cause'" also raised issues of first impression." 379 U.S. at 111.

This is a much stronger case for mandamus because the district court has "usurped power" by its *sua sponte* inquisition of the Petitioner, solely in pursuit of the district court's personal views of appropriate patent policy and in defiance of Congress' statutory policy.

## RELIEF SOUGHT

Petitioner respectfully requests that the Court issue a writ of mandamus reversing the Memorandum Order, and directing the district court to terminate its judicial inquisition of the Petitioner.

**ISSUE PRESENTED**

Did the district court abuse discretion in entering its Memorandum Order which includes the following subsidiary issues:

1.    Did the district court abuse discretion in entering its Standing Order Regarding Third-Party Litigation Funding Arrangements because third-party funding is not relevant to any issue that the district court may consider?

2.    Does the Memorandum Order contradict the Patent Act and the Rules of Civil Procedure by seeking to identify a "real party in interest" that Congress has deemed irrelevant?

3.    Does the Memorandum Order violate Petitioner's attorney-client privilege and work-product immunity?

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

**A.    Nimitz Was Owner of a Patent and Sued Defendants**

The Petitioner is Nimitz Technologies LLC ("Nimitz"). Nimitz filed the four cases that form the caption of the Memorandum Order. Nimitz' complaint against CNET Media, Inc. is Appx23-81; Nimitz' complaint against Buzzfeed, Inc. is Appx82-155; Nimitz' complaint against Imagine Learning, Inc. is Appx156-252; and Nimitz' complaint against Bloomberg L.P. is Appx253-351. All four complaints alleged infringement of U.S. Patent No. 7,848,328, entitled "Broadcast Content Encapsulation" (the "'328 Patent") (Appx30-56).

4

All four complaints affirm that Nimitz is the named assignee of the '328 Patent with the right to enforce the patent. (Appx25 at ¶8; Appx83 at ¶8; Appx157 at ¶7; Appx254 at ¶7). That Nimitz is the lawful assignee of the '328 Patent is reflected in the public records of the United States Patent and Trademark Office as reflected in Appx402-404 of which the Court can take judicial notice.

### B. The District Court's Standing Order and Nimitz' Responses

On April 19, 2022, the district court issued a "Standing Order Regarding Third-Party Litigation Funding Arrangements." It required that parties disclose all

> arrangements to receive from a person or entity that is not a party (a "Third-Party Funder") funding for some or all of the party's attorney fees and/or expenses to litigate this action **on a non-recourse basis** ….

(Appx353-354).[1]

_____

[1] The ordinary distinction between "recourse basis" and "non-recourse basis" is reflected in, for example, publications of the United States Internal Revenue Service:

> There are two types of debts: recourse and nonrecourse. A recourse debt holds the borrower personally liable. All other debt is considered nonrecourse.

(https://apps.irs.gov/app/vita/content/36/36_02_020.jsp).  See also _Bennett v. Donovan_, 703 F.3d 582, 585 (D.C. Cir. 2013) ("Reverse mortgages are generally non-recourse loans, meaning that if a borrower fails to repay the loan when due, and if the sale of the home is insufficient to cover the balance, then the lender has no recourse to any of the borrower's other assets"); _First Indep. Bank of Nev. v. Mohave State Bank_, 2010 U.S. Dist. LEXIS 34517 at *6 (D. Ariz. 2010) ("A non-recourse loan is a 'secured loan that allows the lender to attach only the collateral, not the

Nimitz responded that it "has not entered into any arrangement with a Third-Party Funder, as defined in the Court's Standing Order Regarding Third-Party Litigation Funding Arrangements." (Appx357).

### C. The District Court *Sua Sponte* Begins Judicial Inquisition of Nimitz

After Nimitz filed its statement, the district court *sua sponte* ordered Nimitz's managing member, Mark Hall, to fly from his home in Houston, Texas to testify in Wilmington, Delaware, at a hearing allegedly directed "to determine whether Plaintiff has complied with the Court's standing order regarding third-party litigation funding." (Appx358-359). The district court directed no such order to any of the Defendants.

Mark Hall appeared and testified at the hearing on November 4, 2022, and answered all the questions that the district court posed to him. (Appx360; Appx373-380). The district court conducted the hearing in a manner of a prosecuting attorney examining an adverse witness at trial. *Id*. That the district court was conducting itself as the investigator, prosecutor and fact-finder was evidenced during the questioning of another patent owner when the district court interrupted questions and

_____

borrower's personal assets, if the loan is not repaid'") (quoting *Black's Law Dictionary* 1020-21 (9th ed. 2009)).

6

precluded the patent owner's attorney from asking leading questions.  (Appx385 at 104:3-4).

Mr. Hall confirmed that Nimitz had not entered into any non-recourse funding.  Indeed, he testified that Nimitz (and potentially he personally) was responsible for all costs and liabilities:

> Q. Now, you said that you would assume liability for the patent, is that right, when you took ownership of it?
>
> A. Correct.
>
> Q. What does that mean?
>
> A. Liability in case of -- any monetary liability from a case that did not proceed well.
>
> Q. So is it your understanding, then, if, in this case, for instance, the Court assigned -- or awarded attorney fees to the other side, that you personally would have to pay for them; is that right?
>
> A. I believe that's true, yes.

(Appx377 at 71:8-18).

Moreover, Nimitz' counsel represented to the district court that he had personal knowledge that in each of the four Nimitz cases the only "funding for some or all of the party's attorney fees and/or expenses to litigate this action" was that

7

provided by counsel on an advancement basis and Nimitz was obliged to reimburse counsel for all such funds. (Appx370 at 43:17-22; Appx370 at 44:8-11).[2]

In short, notwithstanding the district court's cryptic questioning "whether Plaintiff has complied with the Court's standing order regarding third-party litigation funding," there is no evidence whatsoever of Nimitz receiving any non-recourse funding and plain sworn testimony contradicting such non-recourse funding.

Despite the order for the hearing stating that the purpose of the hearing was to investigate third-party litigation funding, most of the district court's questioning of Mr. Hall had nothing to do with litigation funding. Instead, the district court's inquisition was directed to Nimitz' relationship with Mavexar LLC, a consulting agency which brought the '328 Patent opportunity to Mr. Hall and which is assisting Nimitz in the litigations and licensing of the '328 Patent. (Appx376 at 68:1-19). Mr. Hall testified that he formed Nimitz (Appx375 at 63:19). Nimitz then acquired the

---

[2]  Rule 1.8(e)(1) of The Delaware Lawyers' Rules Of Professional Conduct specifically allow such advancements:

> (e)  A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that:

> (1)  a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter….

(https://courts.delaware.gov/forms/download.aspx?id=160568).

8

'328 patent as "an investment, just like stocks." (Appx378 at 74:21).  Nimitz left
the day-to-day management of the investment vehicle to its consulting agent
Mavexar and Nimitz' lawyer.  (Appx378 at 74:25-75:2).  Mr. Hall testified that his
relationship with Mavexar was similar to that of any management agent:

> My understanding of what it is, it's a business opportunity presented
> to me from Mavexar, similar to when I retained a management
> company for my rental properties.  I don't know the renters. I don't
> deal with the renters. They do. That's the agreement that we have. If
> there's proceeds to be made, there's an agreement between us as to
> what we split. If there's losses incurred, it's my property, I pay for the
> losses, similar to this.

(Appx378 at 73:20-74:3).

Notably, at the conclusion of the hearing the district court did not voice any
concern that Mr. Hall's testimony or any of the documents requested by the district
court during the hearing evidenced any third-party "funding for some or all of the
party's attorney fees and/or expenses to litigate this action on a non-recourse basis"
which was the ostensible issue for which the hearing was ordered.  (Appx353-354;
Appx358-359).  Instead, the district court lamented a dissatisfaction with the lack of
existing rules governing the disclosure of persons with interest in the litigation:

> I think the testimony has to give pause to anybody who really is
> concerned about the integrity of our judicial system, the abuse of our
> courts, and potential abuse, lack of transparency as to who the real
> parties before the Court are, about who is making decisions in these
> types of litigation.

(Appx386 at 107:14-19). While being critical of what he asserted was an abuse of the judicial system, the district court did not explain that concern, and, more importantly, did not cite to any laws or rules that were breached by Nimitz. Even if it were true that there exists a "lack of transparency as to who the real parties before the Court are, about who is making decisions in these types of litigation," the district court could not cite any laws or rules that required a party to disclose what the district court deemed to be "the real parties before the Court" or "who is making decisions in these types of litigation." The integrity of the judicial system is maintained when litigants follow the law, and following the law is not an abuse of the system. In fact, the lack of transparency which the district court was lamenting was the court's personal dissatisfaction with Congress' choice as to what litigants are required to disclose.

### D. In Continuing Pursuit of its Unwarranted and Improper Judicial Inquisition, the District Court *Sua Sponte* Orders Nimitz to Provide Documents, Including Privileged and Work-Product Documents

On November 10, 2022, the district court issued its Memorandum Order. The Order began with a "whereas" assertion that followed the district court's comment at end of the hearing but which remained as conclusory and untethered to any legal issues before the court:

> the testimony of witnesses and representations of counsel at the November 4, 2022 hearing give rise to concerns that include but are not limited to the accuracy of statements in filings made by Plaintiff

10

> Nimitz Technologies LLC ("Nimitz") with the Court and whether the
> real parties in interest are before the Court....

(Appx2). The district court did not explain its concerns as to the accuracy of Nimitz

statements that there is no non-recourse funding, because there is no reasonable basis

for such concerns. More importantly, the district court remained unable to articulate

any legal basis into inquiring as to what the district court viewed as the "real parties

in interest."

The district court entered a Memorandum and Order requiring Nimitz to

produce by December 8, 2022, essentially all documents relating to Nimitz and the

litigations, including "all communications and correspondence, including emails and

text messages" between Nimitz and Mavexar (Nimitz' licensing and litigation agent)

and between Mavexar and Nimitz' attorneys. (Appx3-4, Section 3). These

documents are manifestly privileged and/or protected by the work-product

immunity. The district court further ordered Nimitz to produce by December 8,

2022, irrelevant confidential financial information, including "[a]ny and all monthly

statements for any and all bank accounts held by Nimitz for the period July 1, 2021

through April 30, 2022." and that Nimitz:

> submit no later than December 8, 2022 a sworn declaration from Mark
> Hall that identifies any and all assets owned by Nimitz as of (1)
> August 30, 2021; (2) September 27, 2021; (3) December 31, 2021;
> and (4) March 30, 2022.

(Appx4-5).

The Memorandum Order required production of documents that included those that were manifestly privileged and/or protected by the work-product immunity. (Appx3-4, Section 3). No similar Order was issued to any of the Defendants.

### E. The District Court's Inquisition and Order Are Unprecedented

At the conclusion of the hearing, the district court essentially admitted that its inquisition was unprecedented and raised novel issues, as the district court asked the parties to identify potential *amici* who could help in the unbounded judicial discovery process the district court had undertaken:

> But it's a lot to digest, and I may ask for supplemental briefing. I'm actually considering inviting *amici* to come in to help. And I would be open to receiving recommendations for amici. *** If you have any recommendations for *amici*, please submit them no later than a week from today. And the cases are going to remain where they are, as I consider these issues.

(Appx386 at 107:20-23). Although not expressly stated, the manifest implication from the district court's request for *amici* is that the district court could not find any precedent for its actions or fashion a legal justification for the inquisition.

### F. Essentially Same Memorandum Order Issued in Other Cases

Nimitz was not the only target of the district court's inquisition. The hearing was held jointly with two other series of cases as reflected in the caption of the hearing. (Appx360-361).

12

Thereafter, the district court issued essentially the same Memorandum Order to the other patent owners in those cases, but not to any Defendants. (Appx405-408, Appx409-413). The district court pursued its inquisition of the plaintiffs in these cases, even though all the cases had already been voluntarily dismissed pursuant to Fed. R. Civ. P. Rule 41(a). (Appx416 item 21; Appx419 item 10; Appx423 item 18; Appx426 item 9).[3]

## REASONS FOR ISSUING THE WRIT

Pursuant to the All Writs Act, appellate courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. §1651(a).

Before a court may issue a writ, three conditions must be satisfied:

First, the party seeking issuance of the writ must have no other adequate means to attain the relief he desires--a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process. Second, the petitioner must satisfy the burden of showing that his right to issuance of the writ is clear and indisputable. Third, even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances.

-----

[3] It is well established that a dismissal under Rule 41(a) immediately deprives the court of jurisdiction over the merits of the case. The district court then retains jurisdiction over a very narrow list of collateral issues, such as motions for costs and fees, contempt and Rule 11 sanctions, and motions to confirm arbitral awards. *Cooter & Gell v Hartmarx Corp.*, 496 U.S. 384, 395-98 (1990).

13

*Cheney v. United States Dist. Court*, 542 U.S. 367, 380-81 (2004) (internal citations omitted; emphases supplied).  <u>See also</u> *In re Volkswagen Grp. of Am*., 28 F.4th 1203, 1206-07 (Fed. Cir. 2022).

The three conditions will be detailed below.  However, the jurisdiction of this Court to issue a writ of mandamus in this case is fully supported by the Supreme Court's decision in *Schlagenhauf v. Holder*, 379 U.S. 104 (1964), in which the Supreme Court held that the circuit court had mandamus jurisdiction to review a district court's order allowing a mental and physical examination of a party under Fed.R.Civ.P. Rule 35.  The Supreme Court held that "the petition was properly before the court on a substantial allegation of usurpation of power" and given that the case "raised issues of first impression" which the courts should determine "so as to avoid piecemeal litigation and to settle new and important problems." *Schlagenhauf*, *supra,* 379 U.S. at 111.  <u>See also</u> *In re BigCommerce, Inc*., 890 F.3d 978 (Fed. Cir. 2018) which cited *Schlagenhauf* for the proposition that "the Supreme Court has confirmed that mandamus relief may be appropriate in certain circumstances to decide "basic" and "undecided" questions." *Id*. at 981.

## I.  <u>Nimitz Has A Clear And Indisputable Right To The Writ</u>

### A.    The District Court Seeks Information That is Barred From Consideration By Statute and This Court's Precedent

The district court has provided only one justification for the Standing Order Regarding Third-Party Litigation Funding Arrangements, the subsequent Order for

a hearing and the Memorandum Order. That lone justification is the district court's interest in determining "whether the real parties in interest are before the Court." (Appx2). But Congress had already disallowed such inquiries, and, thus, the district court's stated justification only reinforces that the district court's Orders constitute an abuse of discretion.

The Patent Act states plainly and unequivocally that a "patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. §281.

Congress defined the term "patentee" as "includ[ing] not only the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. §100. Thus, Congress provided that the legal title holder to a patent, and only the legal title holder, could enforce a patent.

Further, directly related to the district court's concern of the real parties in interest, Fed. R. Civ. P. Rule 17(a)(1) provides that "[a]n action must be prosecuted in the name of the real party in interest," and then further defined that:

> The following may sue in their own names without joining the *person for whose benefit the action is brought*: ***
>
> (G) a party authorized by statute.

(Emphasis added).

Thus, Congress provided that only the legal title holder of a patent—the patentee—can sue and is the only real party in interest. And Congress explicitly

stated that a "person for whose benefit the action is brought" was *not* the proper plaintiff.

The necessary consequence of the above statutes is that Congress made the choice that "person[s] for whose benefit the action is brought" are inconsequential in patent enforcement. The courts cannot consider facts relating to who might be the beneficiaries of patent enforcement. This is so because where the statutes and rules clearly define the sole real party in interest, the district court has no right to choose to pursue other parties in interest. The classic *expressio unius est exclusio alterius* canon of statutory construction states that the expression of one thing in the Patent Act and the Rules implies the exclusion of others. *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168 (1993) ("the Federal Rules do address in Rule 9(b) the question of the need for greater particularity in pleading certain actions, but do not include among the enumerated actions any reference to complaints alleging municipal liability under §1983. *Expressio unius est exclusio alterius*.").

Consistent with 35 U.S.C. §§100 and 281 and Rule 17(a)(1), this Court has held that "[t]he Patent Act provides that *only* a patentee shall have remedy by civil action for infringement of his patent.'" *Paradise Creations, Inc. v. U V Sales, Inc.*, 315 F.3d 1304, 1308 (Fed. Cir. 2003) (emphases supplied, internal quotes omitted); see also *Uniloc USA, Inc. v. Apple Inc.*, 784 F. App'x 763, 766 (Fed. Cir. 2019)

(same); *Univ. of S. Fla. Rsch. Found., Inc. v. Fujifilm Med. Sys. U.S.A.*, 19 F.4th 1315, 1319 (Fed. Cir. 2021) ("Only a 'patentee' may bring a civil action for patent infringement").

Further, this Court has also held that "[t]he Supreme Court has long held that 'the profits or damages for infringement cannot be sued for except on the basis of title as patentee, or as such assignee or grantee, to the whole or a part of the patent, and not on the basis merely of the assignment of a right to a claim for profits and damages, severed from such title.'" *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1381 (Fed. Cir. 2000) (quoting *Crown Die & Tool Co. v. Nye Tool & Mach. Works*, 261 U.S. 24, 42 (1923) in parenthetical).

Nor does it matter that person other than the patent owner has some equitable interest in a patent. "[A] party is not co-owner of a patent for standing purposes merely because he or she holds an equitable interest in the patent" because "a co-owner must hold legal title to the patent." *Taylor v. Taylor Made Plastics*, Inc., 565 F. App'x 888, 889 (Fed. Cir. 2014) (citing *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1578-82 (Fed. Cir. 1991) and *Crown Die & Tool Co. v. Nye Tool & Mach. Works*, 261 U.S. 24, 40-41 (1923)).

Thus, the district court's pursuit of "real parties in interest" is an affront to the plain language of the Patent Act and the Federal Rules, as well as this Court's precedent. It does not matter if a Plaintiff patent owner has funding or if other

persons have some interest in the litigation or even if some third-party may have some equitable rights in the patent. The only relevant issue is whether Nimitz is the legal title holder to the '328 Patent – i.e., is the patentee. Hypothetically, a third-party can by contract own 100% of the recovery in a patent suit but 35 U.S.C. §100 and Rule 17(a)(1)(G) still allow only the patent owner to be the party plaintiff and "real party in interest."

Similarly, there is no abuse or threat to the judicial system if the legal title holders prosecute patent cases without disclosing who might be other parties in interest or who might be making litigation decisions, because that is what Congress has demanded. The only threat and abuse of the judicial system occurs is when anyone defies Congress' choice and attempts to rewrite patent law.

The district court's demands at transparency defy the law by demanding disclosures that Congress deemed irrelevant. Mandamus is necessary to prevent the district court's usurpation of Congress' judgment precluding the type of inquiry that the district court has begun to pursue *sua sponte*. *In re Volkswagen Grp. of Am.*, *supra*, 28 F.4th at 1214 (petition for a writ of mandamus granted because "the district

court's venue conclusions were a clear abuse of discretion for erroneously interpreting governing law and reaching a patently erroneous result").[4]

### B. The Memorandum Order Does Not Allow Nimitz to Assert Attorney-Client Privilege or Work Product Immunity

The district court ordered that Nimitz' counsel produce "[a]ny and all communications and correspondence, including emails and text messages" that counsel had with any representative of Mavexar" regarding a wide variety of topics, including litigation-related topics such as:

d.  the nature, scope, and likelihood of any liability….

e.  U.S. Patent No. 7,848,328;

f.  the retention of O'Kelly & O'Rourke, LLC to represent Nimitz in these cases;

g.  the settlement or potential settlement of these cases;

h.  the dismissal of these cases; and

i.  the November 4, 2022 hearing, including but not limited to the travel expenses and arrangements for Mr. Hall to attend the hearing.

(Appx3-4).

_____

[4] There can be no issue as to the fact that Nimitz is the owner of the patent.  Courts can take judicial notice that the patent was assigned to Nimitz because the assignment was recorded in the U.S. Patent and Trademark Office as reflected on the official USPTO Patent Center.  *Cf.*, *Pandrol USA, LP v. Airboss Ry. Prods.*, 320 F.3d 1354, 1368 (Fed. Cir. 2003).

The district court issued the Memorandum Order even after Nimitz' managing member testified that Mavexar was handling the litigation interactions between Nimitz and counsel as Nimitz' "consulting agent." (Appx378 at 73:20-74:3 and 74:25-75:2). The Order is intentionally geared towards disclosing the most profound of all privileged communications which are the documents that pass between client and counsel regarding the details and merits of an ongoing litigation.

These communications between Mavexar and counsel are privileged, however. The communications were manifestly made in confidence for the purpose of obtaining or providing legal assistance for the client and were made between privileged persons. The unchallenged law in all jurisdictions, including federal courts, is that the privileged persons include the client's authorized agent for communications with counsel:

> "Privileged persons" include the client, the attorney(s), and any of their **agents** that help facilitate attorney-client communications or the legal representation.

*In re Grand Jury*, 705 F.3d 133, 160 (3d Cir. 2012) (quoting *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007) (quoting Restatement (Third) of the Law Governing Lawyers §§ 68, 70 (2000)).

Similarly, work product immunity applies to work conducted by the agents or consultants for counsel or the client:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for

20

> another party or its representative (including the other party's
> attorney, **consultant**, surety, indemnitor, insurer, **or agent**).

Fed. R. Civ. P. Rule 26(b)(3)(A) (emphases supplied).

Thus, the district court ordered production of privileged communications.

Mandamus review is appropriate here as to the privilege issue. "[M]andamus may properly be used as a means of immediate appellate review of orders compelling the production of documents claimed to be protected by privilege or other interests in confidentiality." *In re MSTG, Inc.*, 675 F.3d 1337, 1341-42 (Fed. Cir. 2012) (citing *Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, 591 (3d Cir. 1984)). "In such cases, without mandamus review, litigants might be compelled to disclose documents that are protected from disclosure by strong public policy." *Id*.

Here, the confidentiality of the litigation-related documents "would be lost if review were denied until final judgment, and immediate resolution of this issue would avoid discovery that would undermine the claimed important public interests in protecting settlement discussions from discovery." *In re MSTG, Inc.*, *supra*, 675 F.3d at 1342.

### C. The Interests of Judicial and Patent Policy Support Issuing the Writ

Patent policy may be considered when interpreting statutes, but patent policy cannot be invoked to change the course promulgated by Congress. "[T]he choice of what patent policy should be lies first and foremost with Congress." *Kimble v.*

*Marvel Entm't, LLC*, 576 U.S. 446, 463 (2015). Even if there were merit to the district court's concerns, then in this case as in any other "Congress … is [the] proper audience." *Id*.  See also *Sony Corp. of Am. v. Universal City Studios, Inc*., 464 U.S. 417, 430-31 (1984) ("[A]s new developments have occurred in this country, it has been the Congress that has fashioned the new rules that technology made necessary"); *Biotechnology Indus. Org. v. District of Columbia*, 496 F.3d 1362, 1373 (Fed. Cir. 2007) ("Congress, as the promulgator of patent policy, is charged with balancing these disparate goals.  The present patent system reflects the result of Congress's deliberations.  Congress has decided that patentees' present amount of exclusionary power, the present length of patent terms, and the present conditions for patentability represent the best balance between exclusion and free use").

The district court's Standing Order and Memorandum Order do not apply patent policy and instead change it.  Congress decreed that only the patent owner may enforce a patent and is the only party in interest.  There are manifest reasons for Congress' judgment, not the least being avoiding the disruptions and invasion of privacy that would be incurred in trying to divine who might have "real interests" in a patent as reflected by the district court's Orders.  The demanded discovery does not address anything remotely relevant to the laws that Congress wrote.

Although considerations of federal law are sufficient to require rejection of the district court's Orders, it is also plain that the district court's policies are

inconsistent with judicial policies. Allowing the district court's Orders to stand would mean that defendants in any case, patent or otherwise, would be free to inquire into, *inter alia*, plaintiffs' finances and strategies as reflected in the Memorandum Order to determine who are "real parties in interest." Defendants could do so without any basis or evidence just as the district court here has proceeded without any reason to question that Nimitz is the patentee – i.e., the assignee of the patent in suit. The concept should bring fear to every litigant and the bar.

## II.  Nimitz Has No Other Adequate Means To Obtain Relief

Mandamus is the only way for Nimitz to obtain relief here and there is no opportunity to obtain relief on appeal after final judgment. Without this Court's intervention, the district court will impose its newly formed "real-party in interest in the patent" policy and will force Nimitz to disclose to the public its strategies and privileged communications dealing with the conduct of the litigation.

No appeal from final judgment could remedy the breach of confidentiality and privacy that the district court demands in its Memorandum Order. Indeed, there could be no basis for review after final judgment because none of the documents or "real party interest" issue are matters that are relevant to any issue in the case. Hence, the validity of the Memorandum Order could never be reviewed.

### III. Mandamus Is Appropriate Here Because the District Court Has Undertaken an Illegal and Unprecedented Crusade Trying to Enforce its Own Patent Policy In Derogation of Congress' Prerogative and This Court's Precedent

This Court has noted that *Cheney*'s third factor is "a relatively broad and amorphous totality of the circumstances consideration." *Mote v. Wilkie*, 976 F.3d 1337, 1343 (Fed. Cir. 2020) (quoting *In re Kellogg Brown & Root, Inc*., 756 F.3d 754, 762 (D.C. Cir. 2014) (Kavanaugh, J.)). *Cheney's* "phrasing suggests that the third factor is intended more as a final check on granting the writ than as an amorphously discretionary means of denying it, without consulting the other two factors." *Id*.

The hearing and Memorandum Order manifest that the district court is seeking to create a new patent policy requiring disclosure of the "real parties in interest." That the district court is charting a new and not yet fully formulated patent policy is evidenced by its desire for *amici* briefing. (Appx386 at 107:20-23). A district court would not normally request *amici* briefing in applying established law.

But, while seeking further input, the district court has nevertheless proceeded in prosecuting Nimitz to enforce the district court's newly created "real party in interest" patent policy. Whether the policy is laudable or capricious, patent policies are made by Congress, not by district court judges. Nimitz acted according to law, and was entitled to enforce its patent in accordance with established law. The district court's inquisition is plainly designed to establish that persons other than Nimitz

24

control the litigations and benefit from the litigations. Whether that is true or not, the inquisition is legally irrelevant and the district court's perverse prying into the innards of Plaintiff's finances, business, and prosecution is legally indefensible.

Indeed, it is not even apparent what concerns the district court beyond nebulous concern for who makes litigation decisions or may be a real party in interest. But the district court started with a simple Standing Order directed to non—recourse funding, and is now demanding confidential and privileged litigation documents from Nimitz, untethered to non-recourse funding and lacking any cognizable limit or scope. The district court is effectively a lone-wolf prosecutor, conducting an open-ended investigation of an expanding scope, without any legal justification or providing any basis.

While unusual, the district court's inquisition in this case is not a one-off. As reflected in the caption of the transcript, the district court's hearing involved multiple cases involving two other Plaintiffs.

Further, the district court issued nearly identical Memorandum Orders in all the cases that were heard at the hearing. (Appx405-408, Appx409-413). In addition, the district court is continuing to conduct hearings in other cases raising the same issues. Thus, the district court is creating a novel standard of alleged transparency and public disclosure – to the point of disclosing to the opposite side the details of Plaintiff's inner analyses and discussions that Defendants could not hope to obtain

in discovery because the information is not relevant to any claim or defense in the actions.  The new policy is being implemented in a series of cases, and, if allowed, may be introduced by other district courts.

The present exceptional circumstances warrant immediate review, and the district court's aberrant policy is a particularly fit subject for mandamus because its novel policy directly impacts "proper judicial administration" across a number of cases.  *In re Volkswagen Grp. of Am.*, *supra*, 28 F.4th at 1207.

Citing *Schlagenhauf*, the Court has also noted that "[t]he Supreme Court has confirmed that the requirements for mandamus are satisfied when the district court's decision involves 'basic' and 'undecided' legal questions."  *In re Google LLC*, 949 F.3d 1338, 1341 (Fed. Cir. 2020).

This Court has also held that:

> Importantly, the Supreme Court has confirmed that mandamus relief may be appropriate in certain circumstances to decide "basic" and "undecided" questions.  In addition, mandamus may be appropriate "to further supervisory or instructional goals where issues are unsettled and important."

*In re BigCommerce, Inc.*, 890 F.3d 978, 981 (Fed. Cir. 2018) (quoting and citing *Schlagenhauf* and *In re Queen's Univ. at Kingston*, 820 F.3d 1287, 1291 (Fed. Cir. 2016)).

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the foregoing reasons, Nimitz respectfully requests that the Court issue a writ of mandamus directing the district court to vacate its Order, and cease the district court's judicial investigation of the Petitioner.

Respectfully Submitted,

November 15, 2022

*/s/ George Pazuniak*
GEORGE PAZUNIAK
O'KELLY & O'ROURKE, LLC
824 North Market Street, Suite 1001A
Wilmington, DE 19801
D: (207) 359-8576
gp@del-iplaw.com

*Attorneys for Petitioner Nimitz Technologies LLC*

# ADDENDUM

# TABLE OF CONTENTS

| Date | Doc. No. | Document Title | Page No. |
|------|----------|----------------|----------|
| 11/10/2022 | 27 | Memorandum Order | Appx1 |
| 04/18/2022 | -- | Standing Order Regarding Third-Party Litigation Funding Arrangement | Appx353 |

i

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NIMITZ TECHNOLOGIES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 21-1247-CFC |
| | ) | |
| CNET MEDIA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| NIMITZ TECHNOLOGIES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 21-1362-CFC |
| | ) | |
| BUZZFEED, INC., | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| NIMITZ TECHNOLOGIES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 21-1855-CFC |
| | ) | |
| IMAGINE LEARNING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Appx1

NIMITZ TECHNOLOGIES LLC,    )
    )
       Plaintiff,    )
    )
      v.    )   Civ. No. 22-413-CFC
    )
BLOOMBERG L.P.,    )
    )
       Defendant.    )

## **MEMORANDUM ORDER**

Whereas the testimony of witnesses and representations of counsel at the

November 4, 2022 hearing give rise to concerns that include but are not limited to

the accuracy of statements in filings made by Plaintiff Nimitz Technologies LLC

("Nimitz") with the Court and whether the real parties in interest are before the

Court;

NOW THEREFORE, at Wilmington on this Tenth day of November in

2022, it is HEREBY ORDERED that Plaintiff shall produce to the Court no later

than December 8, 2022 copies of the following documents and communications

that are in the possession, custody, and control of Nimitz, Mark Hall, and/or

O'Kelly & O'Rourke, LLC:

1. Any and all retention letters and/or agreements between Nimitz and

   O'Kelly & O'Rourke, LLC.

2. Any and all communications and correspondence, including emails and

   text messages, that Mark Hall had with Mavexar, IP Edge, Linh Dietz,

2

Papool Chaudhari, and/or any representative of Mavexar and/or IP Edge regarding:

    a. the formation of Nimitz;

    b. assets, including patents, owned by Nimitz;

    c. the potential acquisition of assets, including patents, by Nimitz;

    d. the nature, scope, and likelihood of any liability, including but not limited to attorney fees, expenses, and litigation costs, Nimitz could incur as a result of its acquisition of and/or assertion in litigation of any patent;

    e. U.S. Patent No. 7,848,328;

    f. the retention of O'Kelly & O'Rourke, LLC to represent Nimitz in these cases;

    g. the settlement or potential settlement of these cases;

    h. the dismissal of these cases; and

    i. the November 4, 2022 hearing, including but not limited to the travel expenses and arrangements for Mr. Hall to attend the hearing.

3. Any and all communications and correspondence, including emails and text messages, that George Pazuniak and/or any employee or representative of O'Kelly & O'Rourke, LLC had with Mavexar, IP Edge,

3

Appx3

Linh Dietz, Papool Chaudhari, and/or any representative of Mavexar and/or IP Edge regarding:

  a. the formation of Nimitz;

  b. assets, including patents, owned by Nimitz;

  c. the potential acquisition of assets, including patents, by Nimitz;

  d. the nature, scope, and likelihood of any liability, including but not limited to attorney fees, expenses, and litigation costs, Nimitz could incur as a result of its acquisition of and/or assertion in litigation of any patent;

  e. U.S. Patent No. 7,848,328;

  f. the retention of O'Kelly & O'Rourke, LLC to represent Nimitz in these cases;

  g. the settlement or potential settlement of these cases;

  h. the dismissal of these cases; and

  i. the November 4, 2022 hearing, including but not limited to the travel expenses and arrangements for Mr. Hall to attend the hearing.

4. Any and all monthly statements for any and all bank accounts held by Nimitz for the period July 1, 2021 through April 30, 2022.

4

Appx4

5. Any and all documents relating to Nimitz's use, lease, purchase, and/or

retention of 3333 Preston Road STE 300, #1047, Frisco, TX 75034.

It is FURTHER ORDERED that Plaintiff shall submit no later than

December 8, 2022 a sworn declaration from Mark Hall that identifies any and all

assets owned by Nimitz as of (1) August 30, 2021; (2) September 27, 2021; (3)

December 31, 2021; and (4) March 30, 2022.

_____
CHIEF JUDGE

5

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

STANDING ORDER REGARDING
THIRD-PARTY LITIGATION FUNDING ARRANGEMENTS

At Wilmington on this Eighteenth day of April in 2022, it is HEREBY

ORDERED in all cases assigned to Chief Judge Connolly where a party has made

arrangements to receive from a person or entity that is not a party (a "Third-Party

Funder") funding for some or all of the party's attorney fees and/or expenses to

litigate this action on a non-recourse basis in exchange for (1) a financial interest

that is contingent upon the results of the litigation or (2) a non-monetary result that

is not in the nature of a personal loan, bank loan, or insurance:

1.     Within the later of 45 days of this Order or 30 days of the filing of an

initial pleading or transfer of the matter to this District, including the removal of a

state action, the party receiving such funding shall file a statement (separate from

any pleading) containing the following information:

a.     The identity, address, and, if a legal entity, place of formation

of the Third-Party Funder(s);

b.     Whether any Third-Party Funder's approval is necessary for

litigation or settlement decisions in the action, and if the answer is in the

Appx353

affirmative, the nature of the terms and conditions relating to that approval;
and

     c.     A brief description of the nature of the financial interest of the
Third-Party Funder(s).

2.     Parties may seek additional discovery of the terms of a party's
arrangement with any Third-Party Funder upon a showing that the Third-Party
Funder has authority to make material litigation decisions or settlement decisions,
the interests of any funded parties or the class (if applicable) are not being
promoted or protected by the arrangement, conflicts of interest exist as a result of
the arrangement, or other such good cause exists.

3.     Nothing herein precludes the Court from ordering such other relief as
may be appropriate.

                                         Chief Judge

2

Appx354

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system on November 15, 2022.

A copy of the foregoing was served upon the following counsel of record by electronic mail and upon the district court by Federal Express:

Via Email to counsel for Defendants:

Jeremy D. Anderson, Fish & Richardson P.C., 222 Delaware Ave., 17th Floor, P.O. Box 1114, Wilmington, DE 19801, janderson@fr.com; and

Neil J. McNabnay and Lance E. Wyatt, Fish & Richardson P.C., 1717 Main Street, Suite 5000, Dallas, TX 75201, mcnabnay@fr.com and wyatt@fr.com.

Via Federal Express to the Court:

The Honorable Colm F. Connolly
J. Caleb Boggs Federal Building
844 N. King Street
Unit 31
Room 4124
Wilmington, DE 19801-3555

November 15, 2022

/s/ George Pazuniak
GEORGE PAZUNIAK
O'KELLY & O'ROURKE, LLC
824 North Market Street, Suite 1001A
Wilmington, DE 19801
D: (207) 359-8576
gp@del-iplaw.com

FORM 19. Certificate of Compliance with Type-Volume Limitations

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 22-

**Short Case Caption:** IN RE NIMITZ TECHNOLOGIES LLC, Petitioner.

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 5,991 words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 11/15/2022

Signature: /s/ GEORGE PAZUNIAK

Name: GEORGE PAZUNIAK